312 Ga. 863
FINAL COPY

S21A1098. MURRAY v. THE STATE.

NAHMIAS, Chief Justice.

After a jury trial, Appellant Andrew Murray was convicted of malice murder and other crimes related to the shooting death of Paul Sampleton, Jr. Over the course of his motion-for-new-trial proceedings, Murray was appointed three different attorneys, each of whom he rejected. Representing himself at the last hearing on his motion for new trial, Murray purported to be a different person — "Billy Drew Bey" — who was acting as Murray's attorney, prompting the trial court to enter an order either dismissing or denying Murray's amended motion for new trial because "Bey" had not provided any support for the motion and "Murray" had failed to appear for the hearing.

Murray now appeals that order. As explained below, because the reasons given by the trial court are not proper grounds for dismissing or denying Murray's amended motion for new trial, we

vacate the trial court's order and remand the case for the court to consider the merits of Murray's motion.

1. In June 2014, a Gwinnett County grand jury indicted Murray, Tavaughn Saylor, and Larnell Sillah for malice murder, two counts of felony murder, armed robbery, two counts of burglary, and nine other crimes in connection with the December 2012 shooting of Sampleton. Murray and Saylor were also charged with possession of a firearm by a convicted felon and felony murder based on that offense. Murray, Saylor, and Sillah were tried together from September 15 to October 7, 2014. At trial, Murray initially represented himself, but his stand-by counsel took over the representation after the first week. The jury found Murray guilty of all charges except one burglary count. He was sentenced to serve life in prison without the possibility of parole, plus a consecutive life sentence and 120 years in prison. He remained in custody.

On October 10, 2014, three days after the trial ended, Murray's trial counsel filed a boilerplate motion for new trial, asserting summarily that the verdict was not supported by the evidence and

was "contrary to the law and the principles of justice and equity" and that the trial court committed "errors of law." That motion was amended on September 30, 2016, by Michael Marr, Murray's first post-conviction counsel. The amended motion raised 12 enumerations of error, including claims that the trial court erred by merging rather than vacating the felony murder counts, by allowing Murray's stand-by counsel to conduct voir dire, by allowing the prosecutor to treat Murray's mother and another witness as hostile witnesses, and by admitting three pieces of gang-related evidence and evidence of Murray's brother's murder conviction. The amended motion also claimed that Murray's trial counsel provided ineffective assistance by failing to file a demurrer to certain counts of the indictment, to move to exclude the testimony of Murray's mother, and to move for a mistrial or to sever when evidence was presented that Sillah intimidated a witness.[1]

---

[1] The amended motion appeared to entirely supplant trial counsel's initial, boilerplate motion for new trial. The amended motion also "adopts and incorporates" the enumerations of error raised by Murray's co-defendants, but their motions for new trial are not in the record on appeal.

On February 7, 2017, the trial court held what was supposed to be an evidentiary hearing on Murray's motion for new trial, at which Murray expressed dissatisfaction with Marr's representation. Ultimately, however, Murray said that he wanted Marr to remain as his counsel, and the hearing was continued so that Murray could talk with Marr about the issues that Murray wanted to raise. In June, Murray filed a motion to remove Marr as counsel. In August, the trial court issued an order clarifying that Murray was still represented by Marr. In January 2018, Murray filed pro se another motion to remove Marr, as well as two amended motions for new trial. On February 1, Marr filed a motion to withdraw as Murray's counsel, which the court granted on February 7. Also on February 7, the court appointed Frances Kuo to serve as Murray's attorney. On February 13, Murray filed pro se another amended motion for new trial. On March 19, Murray filed a motion requesting to represent himself, and the trial court allowed Kuo to withdraw on April 12.

During the second attempt at a motion-for-new-trial evidentiary hearing on October 16, 2018, Murray appeared pro se,

but he told the trial court that he was "under duress" and wanted an attorney to be appointed for him. The hearing was continued again so that Murray could have counsel, and the next day the court appointed G. Richard Stepp to represent Murray. Between October 2018 and February 2019, Murray made 32 pro se filings, including seven filings complaining about Stepp or asserting that Murray was being represented by himself or by "Billy Drew Bey." On May 1, 2019, Stepp moved to withdraw, noting that Murray had filed a bar grievance against him; the trial court granted that motion on May 15, after a hearing at which the court discussed the consequences of Murray representing himself and Murray waived his right to counsel. On May 30, the trial court entered an order finding that Murray had "made a knowing, intelligent, and voluntary waiver of the right to counsel" and allowing him to represent himself.

Proceeding pro se, Murray filed two motions to amend his motion for new trial on June 27, 2019, raising 25 new enumerations of error, including claims that the trial court erred by failing to inform him of the accusation against him, that his trial counsel

provided ineffective assistance by failing to object to hearsay testimony of two witnesses and failing to raise a Confrontation Clause objection to Sillah's interview, and that there was exculpatory evidence that the prosecutor withheld and that his trial counsel should have discovered. Murray also raised a number of complaints about the way he was arrested and indicted and the way he was treated following his convictions.[2]

On December 9, 2019, the trial court convened the third attempt at a motion-for-new-trial evidentiary hearing. When Murray first addressed the court, he asserted that he was "Billy Drew Bey," the "attorney in fact for Defendant Andrew Richard Murray." When he admitted that he did not have a Georgia Bar number, the court explained to him that Bey could not represent

---

[2] These two motions are both titled "Motion to Amend Motion for New Trial and New Legal Claim," and in them Murray requested that the trial court "allow new legal claim[s] to be heard at the motion for new trial." Thus, the motions appear to be adding to, rather than supplanting, the earlier motion-for-new-trial filings. Because the three amended motions for new trial that Murray filed pro se while he was represented by Marr and then Kuo were nullities, these two new motions appear to be adding to the amended motion for new trial filed by Marr. See *Lopez v. State*, 310 Ga. 529, 536 (852 SE2d 547) (2020) ("[A] pro se filing by a represented party is a legal nullity without effect.").

Murray, but Murray could represent himself. As the hearing continued, Murray appeared to acknowledge that he was Murray, and he asserted that he needed a number of documents to help him develop his arguments. The hearing was continued again, and the court entered an order noting that Murray and Bey are the same person and ordering the district attorney to provide Murray with certain documents before the next hearing.

On February 3, 2020, Murray filed "Defendant[']s Amended Brief In Support Of His Motion For New Trial And Request For A Mistrial," adding seven new claims to be considered "not excluding any briefs already filed with the Courts." On February 20, the trial court again attempted to hold an evidentiary hearing on Murray's motion for new trial, and Murray again asserted that he was "Billy Drew Bey," the "attorney in fact for the defendant." Murray acknowledged that Bey was not a member of the Georgia Bar, and the court again explained that Bey therefore could not represent Murray. The following exchange then occurred:

DEFENDANT: I fully understand everything you just

7

said, but I am not a member, I cannot represent Andrew Murray, so don't have any business here, so —

COURT: Very good.

DEFENDANT: — you might as well tell them to take these shackles off so I can go about my business.

COURT: When you see Mr. Murray, if you'll let him know that we are going to dismiss his appeal. You can head back with the deputies.

DEFENDANT: I'd like to object.

COURT: You may object, sir. You can do that in writing as soon as you get the order. Will you do an order for me?

MR. D'ENTREMONT [the prosecutor]: I'll do an order, Judge.

COURT: Thank you.

MR. D'ENTREMONT: And I do want to make sure I understand the basis for the order, is that based on the fact that Mr. Murray has been a fugitive while the motion has been pending.

COURT: He's not here. There's another individual that has identified himself for the Court.

MR. D'ENTREMONT: That's my understanding, Judge.

COURT: Yes, sir, thank you.

Almost a year later, on February 17, 2021, the trial court entered an order entitled "DISMISSAL OF APPEAL." The order explained that Murray identified himself as Bey at the February 20, 2020 hearing. The order then continued:

As such, Mr. Bey offered no support for Mr. Murray's amended motion for new trial.

WHEREFORE, having failed to appear for his own motion for new trial hearing, Defendant Andrew Richard

8

Murray's amended motion for new trial is hereby DENIED.

A week later, the court amended the order. This "Amended DISMISSAL OF APPEAL" corrected the first line of the order, which initially incorrectly said that Murray pled guilty, rather than being found guilty by a jury. The remainder of the order was not changed. Still representing himself, Murray filed a timely appeal.

2. The trial court's order is confusing. Although the court asserted at the last hearing that it was going to "dismiss [Murray's] appeal" and the final order is titled "Amended DISMISSAL OF APPEAL," Murray did not have an appeal pending at the time of the order, only an amended motion for new trial. And as to that motion, the body of the order says that it "is hereby DENIED," not dismissed. The court gave two reasons for its ruling: Murray "offered no support for [his] amended motion for new trial" at the hearing, and Murray "failed to appear for his own motion for new trial hearing." We will discuss those reasons in turn.

(a) To the extent the first reason indicates that the trial court

considered the merits of the numerous claims raised by Murray's amended motion for new trial and denied them all because he did not provide additional evidence beyond the trial record, the court erred. See *State v. Cash*, 298 Ga. 90, 94 (779 SE2d 603) (2015) (explaining that although some grounds for a motion for new trial "do or may require new evidence," other grounds "do not require new evidence"). Some of Murray's claims required additional evidence to be successful because they relied on alleged evidence that exists outside the trial record, such as his claims that the State withheld or his counsel failed to find certain exculpatory evidence.

However, some of Murray's enumerations did not require additional evidence, such as his merger claim, his claims that the trial court erred by admitting certain evidence, and some of his claims of ineffective assistance of trial counsel. See, e.g., *Bundel v. State*, 308 Ga. 317, 320 (840 SE2d 349) (2020) (holding that the appellant's claim on motion for new trial that was "limited to the evidence introduced at trial" did not require a hearing); *Wilson v. State*, 277 Ga. 195, 198 (586 SE2d 669) (2003) (explaining that

10

"where the ineffectiveness relates to alleged errors made during the course of the trial as shown by the transcript, then trial counsel's testimony may not be required; the record speaks for itself" (citation and punctuation omitted)). The trial court could have denied or granted these claims based entirely on the existing record. Thus, denying them on their merits on the ground that Murray failed to present additional support for them at the hearing would be error and undermines any effort to read the order as a ruling on the merits of Murray's claims. Indeed, neither Murray nor the State contends that the trial court ruled on the merits of his amended motion, and the Attorney General's brief states that "[t]here is nothing in the record to suggest that the trial court considered the merits of the motion for new trial as amended."

(b) To the extent the trial court dismissed Murray's amended motion for new trial without considering its merits because Murray purportedly failed to appear at the hearing, that too was error. Motions for new trial can be, and regularly are, decided without a hearing. See, e.g., *Robinson v. State*, 309 Ga. 729, 729 n.1 (848 SE2d

11

441) (2020) (noting that the trial court ruled on the motion for new trial without a hearing); *Shubert v. State*, 306 Ga. 490, 490 n.1 (831 SE2d 826) (2019) (same).

If a defendant does not request a hearing or does not appear at a scheduled hearing, he may waive his right to a hearing and the opportunity to expand the record, but that does not waive his right to have the merits of his motion for new trial considered and decided by the trial court based on the existing record. See, e.g., *Bundel*, 308 Ga. at 319 (explaining that a "trial court has no duty to hold . . . a hearing [on a motion for new trial] on its own initiative"); *Jones v. State*, 276 Ga. 171, 173 (575 SE2d 456) (2003) (holding that the trial court did not err by ruling that the appellant's lawyer waived the right to a hearing on the motion for new trial by failing to appear); *Wilson*, 277 Ga. at 198 (explaining that when no hearing on a motion for new trial is requested, "only the right to a hearing is waived"). Thus, Murray's absurd assertion that he was not at the hearing was not a valid basis for the trial court to dismiss his amended motion for new trial.

(c) In arguing that we should affirm the trial court's order, the Attorney General's brief cites *Mimms v. State*, 254 Ga. App. 483 (562 SE2d 754) (2002), which held that after Mimms's attorneys failed to appear at his motion-for-new-trial hearing, "the trial court did not err in dismissing Mimms' motion." Id. at 486. However, two earlier statements in that opinion indicate that Mimms's motion for new trial was actually denied on the merits rather than dismissed on that ground. See id. at 484 ("The trial court denied Mimms' motion for new trial."); id. ("Mimms argues that it was error for the trial court to deny her motion without a hearing . . . ."). Likewise, in this Court's certiorari opinion affirming the holding in *Mimms* on the issue of attorney leaves of absence, we said that "the trial court denied [Mimms's] motion [for new trial] without a hearing." *Jones*, 276 Ga. at 171-172.[3] And, as indicated in the previous subdivision, we then held that the trial court did not err by holding that Mimms's lawyers waived her *right to a hearing* on the motion for new trial by

___

[3] *Jones* was the lead case name in an opinion that also included review of *Mimms* and a third Court of Appeals case.

failing to appear. See id. at 173.

Moreover, after *Mimms* stated its conclusion that the trial court did not err by dismissing Mimms's motion based on her lawyers' failure to appear at the hearing, the opinion cited three prior Court of Appeals decisions. See *Mimms*, 254 Ga. App. at 486. But only one of those cases — *Scott v. State*, 121 Ga. App. 458 (174 SE2d 243) (1970) — held that the dismissal of a motion for new trial was proper when the defendant's counsel did not show up for the hearing. See id. at 461. And *Scott* did not cite any authority in support of this holding, which is contrary to the decisions of this Court discussed in the previous subdivision.[4] Accordingly, *Scott*'s holding on this point is hereby disapproved, as is *Mimms*'s holding to the extent it indicates that dismissal of a motion for new trial based on a failure to appear at a hearing on the motion may be proper.

---

[4] The *Scott* court also concluded in the alternative that even if the dismissal of the motion for new trial was error, there was no harm, because elsewhere in the court's opinion, every ground that was raised in the motion had been considered and rejected. See 121 Ga. App. at 461.

3. Murray's flagrant disrespect for the trial court and judicial process — as demonstrated by many of his actions, including his repeated refusal to accept the lawyers appointed for him (even after he specifically requested them), his filing of dozens of pro se motions while represented, his creation of an imaginary character to serve as his lawyer, and his refusal to identify himself correctly to the trial court — was undoubtedly frustrating for the court, which was striving to ensure that he received the benefit of properly conducted motion-for-new-trial proceedings. Murray's behavior was inappropriate and served only to waste the trial court's time and delay resolution of his case. Nevertheless, in light of the analysis above, we must vacate the trial court's order and remand the case for the court to consider the merits of Murray's amended motion for new trial.

*Judgment vacated and case remanded. All the Justices concur.*

Decided November 23, 2021.

Murder. Gwinnett Superior Court Before Judge Mason.

Andrew Murray, *pro se*.

*Patsy A. Austin-Gatson, District Attorney, Tristan E. Gillespie, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Parisia F. Sarfarazi, Assistant Attorney General*, for appellee.